T.C. Memo. 2004-249


UNITED STATES TAX COURT


DUANE A. DWORSHAK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 15268-02.          Filed November 3, 2004.


Duane A. Dworshak, pro se.

<u>Linette Angelastro</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined a deficiency in petitioner's Federal income tax of $3,875 for 1997 and an addition to tax for failure to timely file under section 6651(a)(1) of $305.

After concessions, the issues for decision are:

1.    Whether petitioner operated his direct marketing activity for profit in 1997.  We hold that he did.

2.    Whether petitioner may deduct business expenses for 1997 in an amount greater than respondent conceded.  We hold that he may not.

3.    Whether petitioner is liable for an addition to tax under section 6651(a)(1) for failure to timely file his return for 1997.  We hold that he is.

Section references are to the Internal Revenue Code as amended and in effect for 1997.  Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.    Petitioner

Petitioner resided in California City, California, when he filed his petition.

Petitioner has been employed by the Los Angeles County Probation Department since 1984.  Petitioner was employed as a supervisor at a juvenile detention camp at all times relevant to this case.  Petitioner received wages from Los Angeles County of $41,139 in 1995, $42,372 in 1996, and $48,913 in 1997.

B.  <u>Cell Tech</u>

Around 1995, petitioner purchased and began using some health care and nutritional products sold by the Cell Tech Co. (Cell Tech).  Petitioner liked the Cell Tech products he used.

Cell Tech directly marketed and distributed its products to the public through outside sales representatives.  The Cell Tech sales representative who sold petitioner these products asked him whether he wanted to become a Cell Tech sales representative.  As a Cell Tech sales representative petitioner could earn commissions on:  (1) Customer orders of Cell Tech products placed through him; and (2) customer orders placed through other Cell Tech representatives recruited by petitioner and other Cell Tech representatives recruited by them and their recruits.  The Cell Tech sales representative told petitioner that she knew of several Cell Tech representatives who earned sizable commissions.

Petitioner became a Cell Tech representative in June 1995. Cell Tech was his first independent business venture.  Petitioner was interested in engaging in an activity that would supplement or eventually replace his income from the Probation Department. Petitioner believed that his income from direct marketing would increase sufficiently to eventually replace his wages from the Probation Department.

The sales representative told petitioner that to get started he would need to spend about $2,000 for:  (1) Cassette tapes and

other sales materials promoting Cell Tech and its products, (2) a mailing list of potential customers, and (3) mailing envelopes in which to enclose the cassette tapes and sales materials.

From June 1995 through most of 1996, petitioner mailed Cell Tech sales material packages to potential customers. About 2 percent of the people to whom he mailed materials purchased products from him during that time.

Petitioner planned to increase the quantity of the products he sold and the number of sales representatives he recruited. He tested products, evaluated potential companies, and tried to identify the most efficient method of selling products. Petitioner also bought and read books and periodicals about direct marketing in general and specific companies for which he became or was considering becoming a sales representative. Petitioner kept records of his customer base, his mailings and whether they resulted in sales or recruits, and his income and expense receipts for his marketing activity.

By late 1996, petitioner had become dissatisfied with being a Cell Tech representative. In late 1996 and in 1997, the positive response to petitioner's Cell Tech mailings declined to less than .5 percent, and many of his customers stopped buying Cell Tech products. Petitioner concluded that it was not productive for him to continue mailing Cell Tech materials. He

stopped mailing unsolicited sales materials to potential customers and began using telephone calls and meetings to make sales. Although petitioner continued to be a Cell Tech representative, he reduced his efforts to sell Cell Tech products and began to look for sales positions with other direct marketing companies.

## C. Other Companies

Petitioner used some products from other companies to decide whether he wanted to sell those products. In 1996 and 1997, petitioner considered becoming a sales representative for several other direct marketing companies such as Awareness Co., Telecard Network Co., The People's Network (TPN), and Vaxa Co. In 1996 and 1997, petitioner briefly sold telephone cards as a Telecard Network Co. representative, but he stopped when he concluded that he could not produce the profits he sought.

Petitioner became a TPN representative in 1997. TPN sold subscriptions to the TPN satellite television channel, household and personal care products, and vitamins offered on TPN's satellite channel and in TPN's sales catalog. The TPN satellite channel also featured motivational speakers who provided advice and guidance to individuals on self-improvement and/or personal development. As a TPN representative, petitioner earned commissions on subscribers he brought to the TPN satellite

channel and on any TPN products purchased by his customers from the TPN satellite channel or sales catalog.

Petitioner focused his marketing activity on selling TPN and its products. He called and sent TPN cassettes, videotapes, and sales materials to potential customers of TPN products.

In 1997, petitioner attended several conferences for TPN representatives in Dallas, Texas, where TPN was headquartered. The conferences featured direct marketing industry professionals and suppliers of TPN materials and products.

Petitioner made lists of people he believed were potential customers of TPN products and who might be interested in becoming sales representatives. Petitioner met with these people and distributed sales materials to them. From June 1995 to December 1997, petitioner spent 10 to 20 hours per week on his marketing activity.

D.   Petitioner's Tax Returns

Petitioner reported gross income, expenses, and losses from his marketing activity on his 1995, 1996, and 1997 returns, and respondent conceded that petitioner substantiated business expenses for 1997, as follows:

| | Reported by petitioner | | | Amount respondent concedes petitioner substantiated |
| | 1995 | 1996 | 1997 | for 1997 |
|---|---|---|---|---|
| Other income: | | | | |
| Commissions | $2,307 | $7,326 | $2,070 | |
| Gross income | 2,307 | 7,326 | 2,070 | |
| | | | | |
| Expenses: | | | | |
| Advertising | 5,224 | 2,643 | 2,955 | $2,955 |
| Car and truck | 918 | 1,530 | 1,861 | 1,861 |
| Depreciation | 507 | 348 | 318 | -0- |
| Legal and professional services | – | 50 | – | – |
| Repairs and maintenance | 70 | – | – | – |
| Supplies | 265 | 357 | 315 | -0- |
| Travel | – | 497 | 1,290 | 267 |
| Meals and entertainment | – | 594 | 1,394 | 1,395 |
| Utilities | 327 | 737 | 617 | -0- |
| Other: | | | | |
| Business courses | 126 | 473 | 409 | -0- |
| Books | 22 | 442 | 97 | -0- |
| Subscriptions | 62 | 206 | 522 | -0- |
| Business education | – | 329 | 645 | -0- |
| Distributorship/ franchise fees | 1,515 | 233 | 1,320 | 1,320 |
| New product samples | – | 2,896 | 784 | -0- |
| Product testing | 1,379 | 2,490 | 4,616 | 1,846 |
| Total expenses | 10,415 | 13,825 | 17,143 | 9,644 |
| | | | | |
| Net loss | (8,108) | (6,499) | (15,073) | |

Petitioner untimely filed his return for 1997 on September 15, 1999. Petitioner reported on the Schedule C, Profit or Loss From Business, he attached to that return that his principal business and product or service was "Network Marketing: Personal

Care, Nutritional Products, Personal Development and Distributor Services".

OPINION

A.   Whether Petitioner Operated His Direct Marketing Activity for Profit in 1997

   1.   Background

The issue for decision is whether petitioner operated his direct marketing activity for profit in 1997.  The parties agree that petitioner's undertakings as a sales representative for various direct marketing companies are one activity.

A taxpayer conducts an activity for profit if he or she does so with an actual and honest profit objective.  Surloff v. Commissioner, 81 T.C. 210, 233 (1983); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983).  In deciding whether petitioner operated the direct marketing activity for profit, we consider the following nine factors:  (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profits, if any, which are

earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved.  Sec. 1.183-2(b)(1) through (9), Income Tax Regs.  No single factor controls.  Brannen v. Commissioner, 722 F.2d 695, 704 (11th Cir. 1984), affg. 78 T.C. 471 (1982); sec. 1.183-2(b), Income Tax Regs.

2.  Applying the Factors

Respondent contends that the factors in section 1.183-2(b), Income Tax Regs., favor respondent, except respondent agrees that the appreciation of assets factor does not apply.

Respondent contends that petitioner did not conduct his activity in a businesslike manner, keep proper books and records, or have a business plan.  We disagree.  A business plan may be evidenced by actions of the taxpayers where there is no written business plan.  Phillips v. Commissioner, T.C. Memo. 1997-128. Petitioner's actions show that he had an informal business plan. He expected to improve his business by increasing the number of customers and recruiting more sales representatives.  He sought to identify the best companies with which to do business, the best products for sale, and the most efficient method for marketing those products and for recruiting sales representatives.  He expected that his income from his marketing activity would ultimately replace his wages from the Probation Department.

Petitioner kept records of income and expenses from his marketing activities, and he kept records of the success rates of his mailings and the size of his customer base.

A change of operating methods or abandonment of unprofitable methods in a manner consistent with an intent to improve profitability may indicate a profit objective.  Krebs v. Commissioner, T.C. Memo. 1992-154; Pirnia v. Commissioner, T.C. Memo. 1989-627; sec. 1.183-2(b)(1), Income Tax Regs.  Beginning late in 1996, petitioner made numerous changes in his direct marketing activity in an attempt to make a profit.  Petitioner searched for different companies for which to sell, and he changed his methods when they were not successful.  He obtained sales positions with other direct marketing companies after he became dissatisfied with being a Cell Tech representative.  He stopped sending unsolicited Cell Tech mailings after concluding they were ineffective as a sales technique and began to use telephone calls and meetings to make sales.  He briefly became a Telecard Network Co. representative in 1996 and 1997 but stopped when he concluded that the Telecard Network Co. would not produce the profits he sought.  In 1997, he became a TPN representative and concentrated his efforts on selling TPN and its products. This factor favors petitioner.

Respondent contends that petitioner lacked any expertise in direct marketing.  We disagree.  Efforts at gaining experience

and a willingness to follow expert advice may indicate a profit objective. Krebs v. Commissioner, supra. Similarly, preparation for an activity by study of its accepted business, economic, and scientific practices, and consultation with those who are expert therein, may indicate that the taxpayer entered into the activity for profit. Id.; Pirnia v. Commissioner, supra; sec. 1.183-2(b)(2), Income Tax Regs. Petitioner read books and periodicals and attended workshops and conferences to learn about direct marketing. This factor favors petitioner.

From June 1995 to December 1997, petitioner worked 10 to 20 hours per week on his marketing activity. Respondent concedes that petitioner spent a significant amount of time on this activity. Respondent contends that petitioner should have been doing more than he did, but respondent does not say what else petitioner should have done. This factor favors petitioner.

Petitioner had no previous success in similar activities. This factor favors respondent.

Respondent contends that the fact that petitioner had losses from his marketing activity in 1995, 1996, and 1997 shows that petitioner did not have a profit objective. We disagree. Losses incurred during the startup stage of an activity do not indicate that the activity is not operated for profit if the taxpayer's losses were not sustained for a period beyond that which is reasonably necessary for him or her to achieve a profit.

Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967). This factor is neutral.

Respondent contends that the financial status factor favors respondent because petitioner was employed full time. We disagree. Petitioner earned wages of less than $50,000 per year in 1995, 1996, and 1997. It does not appear that his aim was to shelter income from tax. This factor favors petitioner.

Respondent contends that petitioner conducted his direct marketing activity because he derived pleasure from it. We disagree. We do not believe petitioner derived a significant amount of personal pleasure from his direct marketing activity. This factor favors petitioner.

We have previously decided whether various direct marketers had profit objectives. For example, we held that the taxpayers lacked a profit objective in Elliott v. Commissioner, 90 T.C. 960, 969-973 (1988), affd. without published opinion 899 F.2d 18 (9th Cir. 1990); Nissley v. Commissioner, T.C. Memo. 2000-178; and Poast v. Commissioner, T.C. Memo. 1994-399. In those cases, the taxpayers derived significant amounts of personal pleasure from their Amway activities through hosting social gatherings in their homes for prospective customers and attending conventions and seminars for Amway representatives, thus using the marketing activity to deduct personal travel expenses as business expenses. See, e.g., Elliott v. Commissioner, supra (week in Hawaii);

Nissley v. Commissioner, supra (trips to New York, Denver, Atlanta, Orlando, and Minneapolis); Poast v. Commissioner, supra (repeated trips to the Indianapolis Speedway, and trips to Washington, D.C., California, Texas, and Michigan).[1] Petitioner did not use his marketing activity to deduct personal travel expenses. The taxpayers in Nissley said they would continue selling Amway products whether or not they were financially successful. Here, as discussed above, petitioner changed companies and abandoned unsuccessful sales methods. Respondent does not contend that this case is like the Amway cases.

In view of the time and effort petitioner spent on his marketing activity, the startup nature of the activity, and his changes in operations and abandonment of unprofitable methods, we find that petitioner operated his direct marketing activity for profit in 1997.[2]

---

[1] The Commissioner conceded that the taxpayer in Brennan v. Commissioner, T.C. Memo. 1997-60, engaged in an Amway sales activity for profit.

[2] Respondent's counsel stated at trial that petitioner "probably intended to make a profit" from 1995 to 1997 as an outside sales representative for direct marketing companies. However, we have decided this issue on the record, not on the basis of respondent's counsel's statement at trial.

B.   Whether Petitioner May Deduct More Business Expenses Than
     Respondent Conceded

Petitioner contends that he may deduct more expenses for his
direct marketing activity for 1997 than respondent conceded
($9,644).  We disagree.  At trial, petitioner admitted that some
of the products he bought may have been for his own use and not
for product-testing purposes.  Petitioner did not offer credible
evidence that he had more direct marketing expenses for 1997 than
the $9,644 that respondent conceded.

C.   Whether Petitioner Is Liable for the Addition to Tax for
     Failure To Timely File His 1997 Income Tax Return

A taxpayer is liable for an addition to tax up to 25 percent
for failure to timely file a return unless the failure was due to
reasonable cause and not willful neglect.  Sec. 6651(a)(1).

Respondent has met the burden of production under section
7491(c) as to the addition to tax for failure to timely file
under section 6651(a)(1) because petitioner filed his 1997 return
on September 15, 1999, 17 months after it was due on April 15,
1998.  Secs. 6072(a), 6012(a)(1).

Petitioner testified that he filed his return late because
he was busy with his marketing activity.  This is not reasonable
cause for late filing.  Dustin v. Commissioner, 53 T.C. 491, 507
(1969), affd. 467 F.2d 47 (9th Cir. 1972).  Petitioner made no
other argument that he is not liable for this addition to tax.

We hold that petitioner is liable for the addition to tax under section 6651(a)(1) for failure to timely file his 1997 return.

To reflect concessions and the foregoing,

<u>Decision will be entered under Rule 155</u>.