EDDIE J. EASTER AND CARLENE M. EASTER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Easter v. Commissioner
Docket No. 10292-89
United States Tax Court
T.C. Memo 1992-188; 1992 Tax Ct. Memo LEXIS 211; 63 T.C.M. (CCH) 2590; March 30, 1992, Filed *211 Decision will be entered under Rule 155. Eddie J. and Carlene M. Easter, pro se. Marilyn S. Ames, for respondent. COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6653(a)(1)[1]
6653(a)(2)[2]
6661
6651(a)(1)
1984
$ 3,408
$ 170
[3]
--
$ 852  1985
6,751
338
[3]
$ 1,688
1,619
1986
734
37
[3]
--
--
After concessions, the issues for decision are: (1) Whether petitioners' horse activity during 1984, 1985, and 1986 was engaged in for profit under section 183. We hold that it was not; (2) whether petitioners' gross income includes payments received by petitioner Carlene Easter in 1985 and 1986 from a noncompete note awarded to her *212 in her divorce from her prior husband. We hold that it does; (3) whether petitioners are liable for additions to tax under section 6653(a)(1) and (2) for 1984 and 1985, and under section 6653(a)(1)(A) and (B) for 1986; under section 6661 for 1985; and under section 6651(a)(1) for 1984 and 1985. We hold that they are. The notice of deficiency for 1984 was issued only to petitioner Eddie J. Easter. Accordingly, references to petitioners for the year 1984 are only to him. References to petitioner in the singular are also to Mr. Easter. Section references are to the Internal Revenue Code in effect for the years at issue. Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. 1. Petitioners
Petitioners married in June 1985 and were married throughout 1986. They resided in Florence, Texas, when they filed their petition. Petitioners were each married previously. Petitioner was married to Tonya Easter. He and Tonya Easter ceased living together in November 1984 and were divorced in June 1985. Petitioner Carlene Easter was married to Gerald Glenn McPherson until their divorce in *213 May 1985. From 1982 through 1986, petitioner owned and operated E & E Hydraulic and Pump Service (E & E), which was located at petitioner's home. Petitioner maintained a separate bank account for the business in 1984. In 1982 and 1983, petitioner was also employed by River City Air & Hydraulic. In 1986, he was employed by Caliber Construction, Inc. In 1985, petitioner Carlene Easter was employed by Steger & Bizzell. 2. Petitioner's Horse Activities
Petitioner has worked with horses for many years. As a child, he showed horses and worked on a ranch riding horses. He has trained both western pleasure horses and working cow or ranch horses and has shown and fitted halter horses. Petitioner acquired his horse training skills through practical experience. He has not attended seminars or courses to improve his training abilities or his knowledge of operating a horse business. From 1982 through 1986, petitioner's horse activities included training, breeding, and reselling horses. Before 1982, petitioner conducted these activities on land which he rented. In 1982 or 1983, petitioner purchased a homestead with 8.5 acres of land. In 1987 and 1988, petitioner built arenas, *214 barns, round pens, and other facilities on the land for working with horses. Petitioner traded his services to get the material to build these things. For example, he rode a person's horse for a month or two in exchange for pipe. The extent of petitioner's involvement with horses changed over the years. Petitioner sometimes conducted the horse activities while also working a day job. In 1984 he spent between 4 to 6 hours a day working with the horses, and about 8 hours a day running his hydraulic and pump business. Petitioner also trained and rode horses for other people in 1985. In 1986 the horse market fell. That year petitioner began devoting more time toward working with his own horses. Petitioner trained and rode few, if any, horses for others that year. Petitioner performed many tasks associated with the horses to save money. For example, he wormed the horses, trimmed their hooves, and sutured their cuts. Petitioner did not employ any trainers.
Petitioner did not have a business plan. He did not consult an accountant about what books and records he should keep. He did not consult with veterinary experts about how to make the horses more salable. Petitioner had *215 documents which he used in his horse activities. He had business cards. He had stallion service contracts which he used when he bred one of his stallions to another's horse. Petitioner also had a breaking, training, and boarding agreement which he used when he performed services for others. Petitioner had fliers printed announcing the availability of one of his stallions for stud. During the years at issue, petitioner did not keep a record of the points awarded to his horses when he showed them. In 1978, he registered the brands he used to identify his horses. Petitioners did not maintain a separate bank account for their horse activity. At the time of trial, petitioners owned two potentially valuable horses. The first was a stallion, which was the only male offspring of a horse which won over $ 7 million in races during 1990. Petitioners have advertised this horse. The other was a mare whose parents are both "AAA producers". [1] Petitioners were raising the mare's colt. *216 3. Payments Received by Petitioner Carlene Easter Pursuant to a Noncompete Contract
Before 1983, Carlene Easter and her former husband, Gerald Glenn McPherson, lived in Alaska where they owned a business. In 1983 they sold the business. As part of the sale, Carlene Easter and her former husband agreed not to compete with the buyer. The divorce decree between Carlene Easter and Mr. McPherson awarded the noncompete contract to Mrs. Easter as follows: "A note in the amount of approximately $ 1,000.00 per month, payable to * * * [the parties] by Northwest Technical Services, Inc." This provision appears under the heading "Division of Marital Estate". Petitioners received $ 7,000 in 1985 and $ 12,000 in 1986 pursuant to this contract. The divorce decree required Mr. McPherson to pay the following: child support of $ 200.00 per month, with the first payment being due and payable on August 15, 1985, and at the expiration of thirty-two months, the child support payment shall increase to $ 500.00 per month, with the first payment being due and payable on the [sic] January 15, 1988, and a like payment being due and payable on the same day of each month thereafter * * *
*217 This provision appears under the heading "Conservatorship and Support". 4. Petitioners' Federal Income Tax Returns
Petitioner filed an individual income tax return for 1984 using rates for married filing separately on January 28, 1988. On the same date, petitioners filed joint returns for 1985 and 1986. Petitioners' income tax return for 1987 is not dated. Petitioners' 1988 return is dated September 22, 1989. The deficiency notices for 1984, 1985, and 1986 were issued to petitioners on February 15, 1989. Petitioner first reported his horse activity on his 1982 income tax return. The following are the net profits and losses which petitioners reported for their horse activities on their 1982 through 1988 income tax returns: [1]1982 1983
1984
1985
Income
[2]
<$ 4,386> <$ 4,603> $ 661    Deductions
<6,700>
<3,764> <8,329>
<5,855>
NET  <$ 6,700>
<$ 8,150>
<$ 12,932>
<$ 5,194> PROFIT/LOSS  1986
1987
1988
Income
<$ 2,259> $ 4,153 $ 3,250 Deductions
<5,580>
<2,391>
[3] <2,038>
NET  <$ 7,839>
$ 1,762 $ 1,212 PROFIT/LOSS  *218 Petitioners reported the following income from sales of horses on Schedule F for 1982 through 1986: 1982
1983
1984
1985
1986
Amount
[1]
$ 0     $ 0     $ 3,891
$ 1,391 Cost or other basis
[1]
4,386 4,603 3,230
3,650 PROFIT OR LOSS  [1]
<$ 4,386>
<$ 4,603>
$ 661  <$ 2,259>
Petitioners reported the following income for their horse activities on Schedule C for 1987 and 1988: 1987
1988
Gross receipts or sales
$ 4,153
$ 3,250
Cost of goods sold
[1]
[1]
GROSS INCOME  $ 4,153
$ 3,250
Petitioners deducted the following amounts for their horse activities: [1]1982 1983
1984
1985
1986
1987
1988
Feed
$ 523    $ 2,061
$ 5,506
$ 3,293
$ 2,621
$ 1,252
$ 436  Veterinary
436
777
488
312
312
83
390
Death loss
4,000
0
0
0
0
0
0
Farrier
0
25
275
336
166
0
0
Tack
0
840
1,695
1,009
113
0
0
Advertising
0
41
129
132
290
0
31
Depreciation
0
0
0
0
500
1,000
1,000
Dues/fees/
0
20
236
51
320
56
60
subs./pubs.
Other
1,742
0
0
722
1,258
0
212
TOTAL  $ 6,701
$ 3,764
$ 8,329
$ 5,855
$ 5,580
$ 2,391
[2] $ 2,038 *219 Petitioners concede, among other things, that their gross income for 1984, 1985, and 1986 included interest income of $ 637, $ 1,792, and $ 1,579, respectively, and net capital gains of $ 33,057, $ 29,521, and $ 8,669, respectively. Petitioners reported wage income of $ 3,816 from Steger & Bizzell on their 1985 return and wage income of $ 13,263 from Caliber Construction, Inc., on their 1986 return. OPINION 1. Petitioners' Horse Activity
The first issue for decision is whether petitioners' horse activity in 1984, 1985, and 1986 was for profit under section 183. a. Rebuttable Presumption
Section 183(c) disallows certain deductions attributable to an activity not engaged in for profit. Section 183(d) provides that, in the case of an activity which consists in major part of the breeding, training, showing, or racing of horses, if the gross income from the activity exceeds the deductions therefrom *220 for any 2 of 7 consecutive taxable years, then the activity is presumed to be engaged in for profit. In the 7 years from 1982 through 1988, petitioners reported profits in 2 years, 1987 and 1988. Thus, we must decide if petitioners are entitled to a rebuttable presumption that their horse activities were engaged in for profit. While petitioners reported gross receipts or sales for horse activities in 1987 and 1988 of $ 4,153 and $ 3,250, respectively, they did not indicate whether the income was from sales of horses or from services performed. To the extent that this income was attributable to the sale of horses, petitioners should have deducted amounts for basis, or cost of goods sold. Harris v. Commissioner, T.C. Memo. 1986-225; sec. 1.61 -4(a), Income Tax Regs. Petitioners did not make such deductions for either 1987 or for 1988. Accordingly, petitioners overstated their income to the extent it was from the sale of horses. Alternatively, all or a portion of petitioner's horse income in 1987 and 1988 may have been from services performed. However, the record shows that petitioners had little, if any, income from services in 1987 and 1988. Petitioner *221 testified that, because the horse market fell in 1986, he was less active with horses in 1987 and 1988. Petitioners' returns support this. The returns show that, between 1986 and 1987, petitioners' horse-related expenses were dramatically reduced. Petitioners deducted $ 2,621 for feed in 1986, $ 1,252 in 1987, and only $ 436 in 1988. In addition, petitioners deducted $ 166 and $ 113 for farrier and tack in 1986, but nothing for 1987 and 1988. Petitioners deducted $ 290 for advertising in 1986, none in 1987 and only $ 31 in 1988. Accordingly, we conclude that very little or none of the income which petitioners reported from horse activities in 1987 and 1988 was due to petitioner's performance of horse-related services. Finally, we question the credibility of the 1987 and 1988 returns on other grounds. As respondent argues, petitioners prepared the 1988 return after the notices of deficiency were issued in this case. It is unclear from the record when petitioners prepared their 1987 return. These same 2 years are the only years between 1982 and 1988 in which petitioners reported a profit. Considering this in conjunction with petitioners' failure to show the source of their *222 income for 1987 and 1988, we are not convinced that petitioners actually made a profit in those years. For the reasons stated above, we do not believe that petitioners' 1987 and 1988 returns fairly reflect what petitioners earned in those years from the horse activity. Accordingly, we find that the presumption that petitioners engaged in the horse activity for profit is inapplicable. Harris v. Commissioner, supra.
b. Profit Objective
We next decide whether petitioners engaged in the horse activities for profit under section 183. The test for deciding whether an activity is conducted for profit is whether it was entered into with "the actual and honest objective of making a profit." Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Engdahl v. Commissioner, 72 T.C. 659, 666 (1979). Petitioner argues that his goal and objective has always been to earn a profit and that he never has considered the work a hobby. Whether petitioner had the requisite profit objective is an issue of fact to be resolved on the basis of all of the facts and circumstances. Elliott v. Commissioner, 84 T.C. 227, 236 (1985), *223 affd. without published opinion 782 F.2d 1027 (3d Cir. 1986); Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of factors which can be used to determine the existence of a taxpayer's profit objective. No single factor is determinative. Abramson v. Commissioner, 86 T.C. 360, 371 (1986); Golanty v. Commissioner, supra; Dunn v. Commissioner, 70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980). We will examine each factor individually. The first factor is the manner in which the taxpayer carries on the activity. Sec. 1.183-2(b)(1), Income Tax Regs. Evidence of an unbusinesslike manner is relevant in determining that taxpayers did not engage in their activity with the objective to make a profit. Elliott v. Commissioner, 90 T.C. 960, 971-972 (1988), affd. without published opinion 899 F.2d 18 (9th Cir. 1990). Complete and accurate recordkeeping may indicate that an activity is engaged *224 in for profit. Sec. 1.183-2(b)(1), Income Tax Regs. Petitioner testified that he kept records of the number of horses he trained for other people in 1984, and that he kept detailed horse breeding information which he later used to produce stud reports required by the horse association. However, petitioner never showed any of these records to respondent, nor did he produce them at trial. Furthermore, he has not shown that he kept the records for the purpose of cutting expenses or increasing profits. Golanty v. Commissioner, supra at 430; Ewing v. Commissioner, T.C. Memo. 1989-104. Petitioner testified that he thought he received some stud fees during the years at issue, but he did not produce any evidence to corroborate his testimony. Petitioners deducted a total of $ 551 for advertising in the years at issue. At trial, petitioners produced a copy of a flyer which they had printed to advertise one of their stallions for stud. They did not, however, introduce evidence indicating how these fliers were distributed or if they advertised any of petitioner's other services. Petitioner kept ribbons and trophies which his horses won at *225 shows. He registered the brands he used to identify his horses. He did so, however, in 1978 (4 years before he reported his horse activity on his returns), and he has not shown that the registration was related to a profit objective. Petitioner had business cards, stallion service contracts, and breaking, training, and boarding agreements. At trial, however, he presented copies of only one service contract and two breaking, training, and boarding agreements to show that he contracted and was paid for services he performed for others. During the years at issue, petitioners did not maintain a separate bank account for their horse activity, even though they maintained a separate bank account for petitioner's other business, E & E, during at least one of the years at issue. Petitioner did not consult an accountant about what types of books or records he should keep for the business. Petitioner did not convince us that he had a business plan or show that he seriously sought customers. He failed to show how he got customers, or how he expected to become profitable. A change of operating methods or abandonment of unprofitable methods in a manner consistent with an intent to improve *226 profitability may indicate a profit objective. Pirnia v. Commissioner, T.C. Memo. 1989-627; sec. 1.183-2(b)(1), Income Tax Regs. Petitioner purchased a homestead in 1982 or 1983. Petitioner testified that he bought it because it had a house and good land with the potential for development and that the homestead gives the appearance to people that his horse activity is more stable. Petitioner, however, waited approximately 5 years after he purchased the land until he developed it for his horse activity. We think profitability of petitioner's horse activity was at best a secondary reason why he bought the land. Accordingly, we believe that petitioner's purchase of the homestead cannot be characterized as a change in operating methods with the objective to improve profits. On balance, we think this first factor suggests that petitioners did not conduct their horse activities in a businesslike manner. The second factor is the expertise of the taxpayer or his advisers. Sec. 1.183-2(b)(2), Income Tax Regs. "Efforts at gaining experience and a willingness to follow expert advice should * * * be considered" in determining profit objective. Nickerson v. Commissioner, 700 F.2d 402, 407 (7th Cir. 1983), *227 revg. T.C. Memo. 1981-321. Preparation for an activity by extensive study of its accepted business, economic, and scientific practices, and consultation with those who are expert therein, indicates that the taxpayer entered into the activity for profit. Pirnia v. Commissioner, supra; sec. 1.183-2(b)(2), Income Tax Regs.
Petitioner was experienced in some aspects of raising horses. He knew how to perform various tasks associated with the activity himself and did so in order to save money. However, there is little or no indication that he studied the business aspects of the activity (e.g., how to operate for profit) and we are not convinced that he was knowledgeable about these things. Furthermore, petitioner's testimony that he talked to people in the horse training and sales business about how to make the business profitable was vague and unconvincing. The third factor is the time and effort expended by the taxpayer in carrying on the activity. Sec. 1.183- 2(b)(3), Income Tax Regs. The fact that the taxpayer devotes much of his personal time and effort to carrying on an activity, particularly if the activity does not have substantial *228 personal or recreational aspects, may indicate an objective to derive a profit. Tripi v. Commissioner, T.C. Memo. 1983-483. Between 1984 and 1986, petitioner worked at least one other job in addition to conducting his horse activities. During each of these years, he owned and operated E & E. In 1984, petitioner spent about 8 hours each day running E & E and between 4 to 6 hours working with the horses. It is unclear how much time petitioner spent working with horses during 1985. In 1986, however, petitioner trained and rode few, if any, horses for others. He was employed by Caliber Construction, Inc., during that year. We think that petitioner's involvement with his business, E & E, along with his job with Caliber Construction, Inc., indicate that petitioner's horse activity was generally a secondary focus. Petitioner testified about how hard he worked at the horse activity, even when he also worked a day job. He testified that, at times, he drove at night to another State to purchase horses and bring them back to Texas over the weekend. He would then sell them all day Sunday and on Monday evening after working his regular job. Petitioner, however, *229 did not indicate how often he did this or whether he did so during the years at issue, and he did not produce records to corroborate the testimony. Petitioner has not persuaded us that he expended substantial amounts of time and effort in business-related horse activities during the years at issue. The fourth factor is the expectation that the assets used in the activity may appreciate in value. Sec. 1.183-2(b)(4), Income Tax Regs. Petitioner conducted his horse activities on his homestead, which he purchased in 1982 or 1983. Because petitioner waited approximately 5 years to develop it for his horse activity, it appears that he did not purchase the land primarily for this activity. Furthermore, petitioner has not convinced us that he was relying on an increase in the value of the homestead to make a profit. Petitioner has not convinced us that he expected that his horses would appreciate in value. For 1983, 1984, and 1986, petitioner's basis in horses that he sold substantially exceeded his sales price for the horses. For 1987 and 1988, although petitioner reported gross receipts or sales, he did not deduct from that the cost of goods sold or basis. Because the horses petitioner *230 sold between 1983 and 1988 appreciated little in value, if at all, we do not believe that petitioners could have reasonably expected to rely on the appreciation in value of the horses to make a profit. The fifth factor is the success of the taxpayer in carrying on other similar or dissimilar activities. Sec. 1.183-2(b)(5), Income Tax Regs. The fact that the taxpayer has previously engaged in similar activities and converted them from unprofitable to profitable enterprises may indicate that he or she is engaged in the present activity for profit, even though the activity is presently unprofitable. Pirnia v. Commissioner, supra; sec. 1.183-2(b)(5), Income Tax Regs.
The record does not contain evidence of past efforts on the part of petitioner to convert an unprofitable business to one that is profitable. Accordingly, we have not considered this factor in our determination of petitioner's profit objective in his horse activities. The sixth factor is the taxpayer's history of income or loss with respect to the activity. Sec. 1.183-2(b)(6), Income Tax Regs. A history of losses may indicate that the activity was not engaged in for profit. Sec. 1.183-2(b)(6), *231 Income Tax Regs. The objective to make a profit may exist even in the face of a history of losses unaccompanied by any gains. Bessenyey v. Commissioner,45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967). However, a record of large losses over many years is evidence that the petitioner did not have the objective to make a profit. Golanty v. Commissioner,72 T.C. 411, 427 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). Losses sustained because of unforeseen or fortuitous circumstances beyond the control of the taxpayer do not indicate that the activity was not engaged in for profit. Sec. 1.183-2(b)(6), Income Tax Regs.
Petitioner reported losses for his horse activities for 1982 through 1986 in the following amounts: 1982 -- $ 6,699; 1983 -- $ 8,150; 1984 -- $ 12,932; 1985 -- $ 5,194; and 1986 -- $ 7,839. Petitioners did report gains of $ 1,762 and $ 1,212 in 1987 and 1988. However, as discussed previously, we are not convinced that petitioners actually realized gains in these years. We believe that this record of losses indicates that petitioner did not have the objective *232 to make a profit. Golanty v. Commissioner, supra at 427. Petitioner argues that, but for certain circumstances, he would have made a profit in a few of these years. For example, he asserts that the decline of the horse market adversely affected his ability to make a profit. In addition, petitioner argues that, if one of his stud horses had not died in 1982, he may have made a profit that year. Petitioner also argues that his profit prospects have improved because two racetracks opened near petitioners, apparently after the years at issue. We find petitioner's arguments speculative and unconvincing. We believe that petitioners' history of losses shows that their horse activity was not engaged in for profit. The seventh factor is the amount of occasional profit, if any, which is earned. Sec. 1.183-2(b)(7), Income Tax Regs. Petitioners incurred losses for each year between 1982 and 1986. Petitioners reported gains in 1987 and 1988. However, as discussed above, we do not give this fact any weight. The eighth factor is the financial status of the taxpayer. Sec. 1.183-2(b)(8), Income Tax Regs. Substantial income from sources other than the activity *233 (particularly if losses from the activity generate substantial tax benefits) may indicate that the activity is not engaged in for profit. Sec. 1.183-2(b)(8), Income Tax Regs.
Petitioners have income from other sources, against which to deduct these losses, but it is not "substantial" income. Accordingly, we give this factor little weight in our determination of whether petitioner engaged in his horse activities for profit. The ninth factor is whether elements of personal pleasure or recreation are involved. Sec. 1.183-2(b)(9), Income Tax Regs. The fact that the taxpayer derived personal pleasure from the activity is not sufficient to cause the activity to be classified as not engaged in for profit if the activity is, in fact, engaged in for profit as evidenced by other factors. Pirnia v. Commissioner, supra; sec. 1.183-2(b)(9), Income Tax Regs.
Petitioner enjoyed working with horses. He has done so since he was a child. Petitioner testified that his children sometimes rode the horses. We conclude that petitioner's enjoyment of horses weighs against the finding that he engaged in the horse activities for profit. There is some evidence which indicates *234 that petitioners may have engaged in the horse activity for profit, but it is outweighed by evidence showing that they did not. Many of petitioner's claims, such as time spent, number of customers, proportional efforts, business plan, and business records, are vague and uncorroborated. Petitioners have failed to show that they possessed the required profit objective concerning their horse activities for 1984 through 1986. Accordingly, we find that they did not engage in the horse activities for profit. 2. Noncompete Contract
The second issue for decision is whether petitioners' gross income includes payments received by petitioner Carlene Easter in 1985 and 1986 from a noncompete note awarded to her in her divorce from her former husband. Petitioners bear the burden of showing that they are not liable for tax on these payments. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Petitioners argue that petitioner Carlene Easter did not report these payments as income because there was a clear understanding between her and her former husband that the payments were in lieu of child support. Gross income does not include the receipt of payments which *235 are in the nature of child support. Sec. 71(c). Section 71(c) requires child support payments to be "fixed" by the agreement as payable for support of the payor's minor children. The Supreme Court in Commissioner v. Lester, 366 U.S. 299, 305-306 (1961), interpreted the word "fix" to mean that the allocations to child support must be "specifically designated" in the agreement and "not left to determination by inference or conjecture." We do not agree with petitioners' position that the payments in question are child support. The divorce decree did not "fix" this money as child support. The decree labels the payments a division of marital property. The decree "fixes" other money as child support, namely $ 200 for 32 months and then $ 500 per month. Thus, we find that the payments in question are not child support. Accordingly, they are taxable as income to petitioners. 3. Section 6653(a)
The next issue for decision is whether petitioners are liable for additions to tax for negligence for 1984, 1985, and 1986 under sections 6653(a)(1) and (2), and 6653(a)(1)(A) and (B). Section 6653(a) provides for an addition to tax if any part of an underpayment *236 is due to negligence or intentional disregard of rules and regulations. Sections 6653(a)(1) and 6653(a)(1)(A) impose an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules and regulations. Sections 6653(a)(2) and 6653(a)(1)(B) impose an additional liability of 50 percent of the interest payable on the deficiency with respect to the portion of the underpayment which is attributable to negligence or intentional disregard of rules or regulations. Negligence is defined as a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964) and T.C. Memo. 1964-299; Neely v. Commissioner, 85 T.C. 934, 947 (1985). While a showing of honesty, good faith, and disclosure by the taxpayer may preclude the existence of fraud, good faith does *237 not always negate negligence. Wesley Heat Treating Co. v. Commissioner, 30 T.C. 10, 26 (1958), affd. 267 F.2d 853 (7th Cir. 1959); Richlands Medical Association v. Commissioner, T.C. Memo. 1990-660, affd. 953 F.2d 639 (4th Cir. 1992). Rather, the taxpayer must show that he acted reasonably and prudently and exercised due care. Neely v. Commissioner, supra.
As a general rule, taxpayers are charged with knowledge of the law. Harrington v. Commissioner, 93 T.C. 297, 314 (1989); Donahue v. Commissioner, T.C. Memo. 1991-181. While we recognize that some provisions of the Federal income tax are complex, the rule that one may not claim deductions or credits for transactions not entered into with the objective of making an economic profit is well established and is not beyond the comprehension of the layman. Donahue v. Commissioner, supra.
Respondent's determination of a taxpayer's negligence or intentional disregard of rules and regulations is prima facie correct, and the taxpayer bears the burden of proving that he acted *238 reasonably, prudently, and with due care in preparing and filing his Federal income tax returns. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791 (1972); McAlister v. Commissioner, T.C. Memo. 1989-177, affd. without published opinion 923 F.2d 862 (9th Cir. 1991). Petitioners failed to report several thousand dollars in interest income and capital gains for the years at issue. In addition, they did not report as income the payments petitioner Carlene Easter received in 1985 and 1986 pursuant to the noncompete note awarded to her in her divorce from her former husband. Petitioners have not presented evidence to show that they exercised care in preparing their returns for the years at issue, nor have they given any persuasive reason why they should not be liable for the negligence addition. Accordingly, we conclude that they have not met their burden of proof and are liable for additions to tax for 1984, 1985, and 1986 under sections 6653(a)(1) and (2) and 6653(a)(1)(A) and (B). 4. Section 6661
The next issue for decision is whether petitioners are liable for additions to tax for substantial understatement of income *239 tax for 1985 under section 6661. Section 6661(a) imposes an addition to tax when there is a substantial understatement of income tax in any given taxable year. The addition to tax is equal to 25 percent of the amount of any underpayment attributable to the substantial understatement. Sec. 6661(a). A substantial understatement exists if in any year the amount of the understatement exceeds the greater of $ 5,000 or 10 percent of the amount required to be shown on the return. Sec. 6661(b)(1). An understatement, for purposes of section 6661, is the amount by which the amount required to be shown on the return exceeds the amount actually shown on the return. Sec. 6661(b)(2); Tweeddale v. Commissioner, 92 T.C. 501 (1989); Woods v. Commissioner, 91 T.C. 88 (1988). If the taxpayer has substantial authority for his tax treatment of any item on the return, the understatement is reduced by the amount attributable thereto. Sec. 6661(b)(2)(B)(i). Similarly, the amount of the understatement is reduced for any item adequately disclosed either on the taxpayer's return or in a statement attached to the return. Sec. 6661(b)(2)(B)(ii); sec. 1.6661-4(b) *240 and (c), Income Tax Regs.
The taxpayer bears the burden of proving that he is not liable for the addition to tax for substantial understatement of income tax. Rule 142(a). Petitioners have offered no evidence to show why they are not liable for the section 6661 addition. Accordingly, they have not sustained their burden of proof and are liable for the addition to tax for 1985 under section 6661. 5. Section 6651(a)(1)
The final issue for decision is whether petitioners are liable for additions to tax for 1984 and 1985 under section 6651. Section 6651(a)(1) provides for an addition to tax for failure to file a timely tax return, "unless it is shown that such failure is due to reasonable cause and not due to willful neglect". The burden of proof is on petitioner to show that the failure is due to reasonable cause and not willful neglect. United States v. Boyle, 469 U.S. 241, 245 (1985); Davis v. Commissioner, 81 T.C. 806, 820 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985). In order to prove "reasonable cause", a taxpayer must show that he exercised ordinary business care and prudence and was *241 nevertheless unable to file the return within the prescribed time. Crocker v. Commissioner, 92 T.C. 899, 913 (1989); sec. 301.6651-1(c)(1), Proced. & Admin. Regs. In order to disprove "willful neglect," a taxpayer must prove that the late filing did not result from a "conscious, intentional failure or reckless indifference." United States v. Boyle, supra at 245-246; Estate of Newton v. Commissioner, T.C. Memo. 1990-208. A taxpayer may establish reasonable cause for failing to file a timely return by proving that he reasonably relied on the advice of an accountant or attorney and later found that such advice was erroneous or mistaken. See United States v. Boyle, supra at 250; Estate of Paxton v. Commissioner, 86 T.C. 785, 820 (1986); Georgia Ketteman Trust v. Commissioner, 86 T.C. 91, 108-109 (1986). Petitioners were late in filing their income tax returns for 1984 and 1985. They filed each of these returns on January 28, 1988. They have not explained why they did not file timely. Accordingly, they have not sustained their burden of proving that the *242 failure was due to reasonable cause. We hold they are liable for additions to tax for 1984 and 1985 under section 6651(a)(1). To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. For taxable year 1986, sec. 6653(a)(1)(A)↩. 2. For taxable year 1986, sec. 6653(a)(1)(B)↩. 3. Fifty percent of the interest due on the portion of the underpayment attributable to negligence.↩
1. Petitioners did not indicate what an "AAA producer" is.↩
1. Numbers for 1982 have been rounded. ↩
2. Petitioners left this section blank on returns. ↩
3. This is the number shown on return. Correct amount is $ 2,129↩
1. Petitioners left this section blank on returns.↩
1. Petitioners left this section blank on returns.↩
1. Numbers for 1982 have been rounded. ↩
2. This is the number shown on return. The correct amount is $ 2,129.↩