T.C. Memo. 2012-334

UNITED STATES TAX COURT

JOHN A. SERNETT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25295-10.                    Filed December 3, 2012.

<u>Michael J. Dwyer</u>, <u>Ward Rollin Anderson</u>, and <u>Rebecca S. Christensen</u>, for

petitioner.

<u>Blaine Charles Holiday</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Respondent determined deficiencies in petitioner's

Federal income tax of $25,190, $32,122, and $19,892 for 2005, 2006, and 2007,

[*2] respectively. After a concession by respondent,[1] the sole issue for decision is whether petitioner's sprint car racing activity during 2005-07 constituted an activity not engaged in for profit within the meaning of section 183.[2]

FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts is incorporated herein by this reference. Petitioner resided in Minnesota when he petitioned this Court.

I.    Background

During the years in issue petitioner was a successful, fully commissioned telecommunications equipment salesperson for North American Communications Resource, Inc. (NACR). Petitioner also raced sprint cars and operated a sprint car racing activity (Sernett Motorsports).

Petitioner began racing sprint cars in 1975, when he was 19. Petitioner earned his bachelor's degree in business administration from Creighton University in 1978. While at Creighton, petitioner drove sprint cars as a summer job. During

---

[1]Respondent concedes that petitioner substantiated his claimed sprint car racing expenses for 2005-07.

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]** 1982-83 petitioner earned all of his income driving sprint cars for others. In the early 1980s petitioner worked for C.L. Boyd Co., managing its racing team and marketing its construction equipment business. In all, petitioner raced for various racing groups for 15 years before purchasing his own equipment in 1992.

II.     Petitioner's Racing Activity

In 1992 petitioner purchased his own sprint car and transporter to begin Sernett Motorsports. Petitioner set up a separate business account for Sernett Motorsports, and all income and expenses of the activity were paid into and out of that account.

During the years in issue petitioner owned three sprint race cars and a full-sized semitrailer for hauling his cars to racing events. At the time of trial petitioner owned two cars and the semitrailer, which he estimated were worth a total of $155,000. Petitioner also owned or leased a shop in Lakeville, Minnesota, where he maintained his cars and prepared them for racing events.

During the years in issue petitioner kept the following records with respect to Sernett Motorsports: (1) maintenance logs for the cars, (2) a journal documenting his racing performance and how he tuned the cars for each race, and (3) handwritten business records. Petitioner's handwritten business records consisted of one sheet of paper per year on which he recorded Sernett

**[\*4]** Motorsports' racing income and between 18 and 30 envelopes into which he placed receipts for various racing expenses.

Petitioner did not have a written business plan for Sernett Motorsports until he was asked during the audit whether he had one.  The business plan that petitioner wrote during the audit identified four main sources of revenue and profit:  (1) using the novelty and marketing of Sernett Motorsports to brand himself and his full-time employer, NACR; (2) strategically racing at events that would maximize prize money and marketing potential; (3) building equity in racing equipment; and (4) pursuing associate sponsorships.

To help Sernett Motorsports earn prize money, petitioner enlisted the help of several racing colleagues when competing at events.  His brother, Tim Sernett, raced Sernett Motorsports' second car.  Dick Groenwald, a race car mechanic with approximately 30 years of experience, and Scott Mudra, a professional race car mechanic, provided technical advice on, and assistance with, tuning the cars to track conditions.  Petitioner also frequented racing supply shops and attended the Performance Racing Industry Trade Show in Orlando, Florida.

In 2005 Sernett Motorsports competed in 10 events, earning total prize money of $8,445.  In 2006 Sernett Motorsports competed in 21 events, earning

[*5] total prize money of $15,550. And in 2007 Sernett Motorsports competed in 16 events, earning total prize money of $7,435.

To help Sernett Motorsports secure corporate sponsorships, petitioner engaged a professional design firm to design a full-color marketing brochure titled "Marketing On The Move" in 2002. The brochure highlighted the marketing opportunities available to potential corporate sponsors of Sernett Motorsports. Petitioner used the brochure to solicit corporate sponsorships during the years in issue.

Petitioner's previous employer, Progressive Technologies (Progressive), agreed to build a marketing strategy around Sernett Motorsports, and it sponsored Sernett Motorsports for several years during the 1990s. In exchange Sernett Motorsports displayed Progressive's logo on its sprint cars and uniforms.

Petitioner secured commercial sponsors for Sernett Motorsports for 2005-06 from two local companies. In 2005 Advanced Manufacturing Concepts (AMC) and Fast Arch paid $3,750 and $500, respectively, to sponsor Sernett Motorsports, and in 2006 AMC paid $1,800 to sponsor Sernett Motorsports.

From 1992 to 2009 petitioner reported losses from Sernett Motorsports on his Schedules C, Profit or Loss From Business. Petitioner first reported a profit from Sernett Motorsports in 2010, after petitioning the Court in this case.

**[*6]** Petitioner reported Sernett Motorsports' gross income, total expenses, and net profit or loss on the Schedules C attached to his 2000-10 Forms 1040, U.S. Individual Income Tax Return (2000-10 returns), as follows:

| Year | Gross income | Total expenses | Net profit or loss |
|------|--------------|----------------|--------------------|
| 2000 | $54,195 | $111,164 | ($56,969) |
| 2001 | 31,990 | 117,381 | (85,391) |
| 2002 | 31,645 | 127,762 | (96,117) |
| 2003 | 11,360 | 91,777 | (80,417) |
| 2004 | 22,419 | 88,261 | (65,842) |
| 2005 | 14,795 | 76,998 | (62,203) |
| 2006 | 24,939 | 96,126 | (71,187) |
| 2007 | 8,620 | 61,208 | (52,588) |
| 2008 | [1]89,889 | 136,049 | (46,160) |
| 2009 | 5,230 | 25,186 | (19,956) |
| 2010 | 21,812 | 14,452 | 7,360 |
| Total | 316,894 | 946,364 | (629,470) |

[1]Petitioner concedes he overstated Sernett Motorsports' gross receipts and expenses by $83,384 each on the Schedule C attached to his 2008 return.

III. Petitioner's Employment as a Salesperson

Petitioner began working for Progressive as a telecommunications equipment salesperson in 1992. In 2003 NACR acquired Progressive, and NACR has employed petitioner as a fully commissioned salesperson ever since. Because of liability concerns, NACR did not allow petitioner to display NACR's logo on any of Sernett Motorsports' racing equipment during live events, but it allowed

[*7] petitioner to photoshop NACR's logo onto photographs of Sernett

Motorsports' equipment and to send the altered photographs to his customers.

Petitioner has enjoyed significant success as a salesperson. He attained

"President's Club" status, which is awarded to approximately the top 20% of

producers in the industry, for his efforts in 15 of the 18 years preceding trial in this

case. As reported on his 2005-10 Forms 1040 petitioner received wages and

deferred compensation from NACR as follows:

| Year | Wages | Deferred compensation |
|------|-------|-----------------------|
| 2005 | $209,434 | $11,326 |
| 2006 | 235,835 | 20,000 |
| 2007 | 194,593 | 20,500 |
| 2008 | 261,569 | 20,500 |
| 2009 | 87,322 | 16,500 |
| 2010 | 133,318 | 22,000 |

IV.     Petitioner's 2005-07 Federal Income Tax Returns

Petitioner timely filed his 2005-07 returns. Petitioner reported Sernett

Motorsports' income and expenses on the Schedules C attached to his 2005-07

returns. The Schedules C listed petitioner as the proprietor of, and petitioner's

home address as the business address for, Sernett Motorsports. The principal

business of Sernett Motorsports was reported as "Auto Racing Sales" for 2005 and

[*8] 2007 and as "Auto Racing & Sales" for 2006. Petitioner reported Sernett

Motorsports' gross income and total expenses for 2005-07 on his Schedules C as

follows:

|  | 2005 | 2006 | 2007 |
|---|---|---|---|
| Gross income | $14,795 | $24,939 | $8,620 |
| Total expenses | 76,998 | 96,126 | 61,208 |

Respondent examined petitioner's 2005-07 returns and issued a notice of

deficiency to petitioner. In the notice of deficiency respondent determined that

petitioner did not operate Sernett Motorsports for profit, reclassified petitioner's

Schedule C income as other income, and disallowed petitioner's Schedule C

expense deductions in their entirety.[3]

OPINION

I.    Burden of Proof

Generally, the Commissioner's determination of a deficiency is presumed

correct, and the taxpayer bears the burden of proving that the determination is

improper. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). If,

_____

[3]We note that under sec. 183(b)(2), expenses attributable to an activity not engaged in for profit are deductible to the extent of gross income derived from the activity. Accordingly, petitioner is entitled to deduct Sernett Motorsports' expenses to the extent of its gross income even if we find that he did not operate Sernett Motorsports for profit.

[*9] however, a taxpayer produces credible evidence[4] with respect to any factual issue relevant to ascertaining the taxpayer's tax liability for any tax imposed by subtitle A or B and satisfies the requirements of section 7491(a)(2), the burden of proof on any such issue shifts to the Commissioner. Sec. 7491(a)(1). Section 7491(a)(2) requires a taxpayer to demonstrate that he or she (1) complied with requirements under the Code to substantiate any item, (2) maintained all records required under the Code, and (3) cooperated with reasonable requests by the Secretary[5] for witnesses, information, documents, meetings, and interviews. See also Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001).

Petitioner argues that the burden of proof should shift to respondent under section 7491(a) because he produced credible evidence and satisfied the requirements of section 7491(a)(2). However, because we decide this case on the preponderance of the evidence, the burden of proof is irrelevant. See Blodgett v.

---

[4]"'Credible evidence is the quality of evidence which, after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted (without regard to the judicial presumption of IRS correctness).'" Higbee v. Commissioner, 116 T.C. 438, 442 (2001) (quoting H.R. Conf. Rept. No. 105-599, at 240-241 (1998), 1998–3 C.B. 747, 994-995).

[5]The term "Secretary" means the Secretary of the Treasury or his delegate. Sec. 7701(a)(11)(B).

[*10] Commissioner, 394 F.3d 1030, 1039 (8th Cir. 2005), aff'g T.C. Memo. 2003-212; Knudsen v. Commissioner, 131 T.C. 185, 188-189 (2008).

II.     Whether Sternett Motorsports Was Operated for Profit

        A.     Section 183 Generally

A taxpayer who is carrying on a trade or business may deduct ordinary and necessary expenses incurred in connection with the operation of the business.  Sec. 162(a).  However, a taxpayer generally may not deduct expenses incurred in connection with a hobby or other nonprofit activity to offset taxable income from other sources.  Sec. 183(a) and (b).  Section 183(c) defines an "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212."  An activity constitutes a "trade or business" within the meaning of section 162 if it is conducted with continuity, regularity, and for the primary purpose of realizing income or profit.  Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).  The U.S. Court of Appeals for the Eighth Circuit, to which an appeal in this case would lie absent a stipulation to the contrary, see sec. 7482(b)(1)(A), (2), has stated that "[a]n activity is engaged in for profit if the taxpayer has an actual, honest profit objective, even if it is unreasonable or unrealistic."  Keating v. Commissioner, 544 F.3d 900, 904 (8th Cir. 2008), aff'g

**[*11]** T.C. Memo. 2007-309; see also sec. 1.183-2(a), Income Tax Regs. Whether the requisite profit objective exists is determined by looking at all the facts and circumstances, Evans v. Commissioner, 908 F.2d 369, 373 (8th Cir. 1990), rev'g T.C. Memo. 1988-468; sec. 1.183-2(a), Income Tax Regs., and greater weight is given to objective facts than to a taxpayer's statement of intent, Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), aff'd, 792 F.2d 1256 (4th Cir. 1986); sec. 1.183-2(a), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., provides a list of factors to be considered in the evaluation of a taxpayer's profit objective: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, from the activity; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. This list is nonexclusive, and the number of factors for or against the taxpayer is not necessarily determinative. Rather, all facts and circumstances must be taken into account, and more weight may be given to some factors than to others. See Dunn

**[*12]** v. Commissioner, 70 T.C. 715, 720 (1978), aff'd, 615 F.2d 578 (2d Cir. 1980); sec. 1.183-2(b), Income Tax Regs.

B.      Petitioner's Racing Activity

We apply the factors listed in section 1.183-2(b), Income Tax Regs., as follows.

1.      The Manner in Which Petitioner Conducted the Activity

In deciding whether a taxpayer has conducted an activity in a businesslike manner we consider whether the taxpayer:  (1) maintained complete and accurate books and records; (2) conducted the activity in a manner substantially similar to other activities of the same nature that were profitable; and (3) changed operating methods, adopted new techniques, or abandoned unprofitable methods in a manner consistent with an intent to improve profitability.  See Engdahl v. Commissioner, 72 T.C. 659, 666-668 (1979); sec. 1.183-2(b)(1), Income Tax Regs.

Petitioner contends that he operated Sernett Motorsports in a businesslike manner by (1) investing heavily in capital assets, (2) analyzing his performance after each season, (3) consulting with various advisers, (4) racing only in races offering significant prize money, (5) maintaining accurate records, and (6) maintaining a separate checking account for Sernett Motorsports.  Respondent contends that Sernett Motorsports was not operated in a businesslike manner

[*13] because petitioner (1) failed to maintain comprehensive books and records for evaluating his racing activity, (2) lacked a written or credible business plan, (3) commingled his personal funds with his business funds in Sernett Motorsports' checking account, and (4) failed to take steps to reduce costs or to increase profitability.

Although petitioner invested heavily in capital assets, such investment is consistent with respondent's theory that petitioner's racing activity was simply an expensive hobby.  Petitioner kept accurate records, but he seemingly did so to satisfy the Code's recordkeeping requirements rather than as a tool to achieve profitability.  See Golanty v. Commissioner, 72 T.C. 411, 430 (1979), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981); Nissley v. Commissioner, T.C. Memo. 2000-178, 79 T.C.M. (CCH) 2105, 2110 (2000).  Similarly, petitioner testified that he consulted with his C.P.A. regarding various tax matters but he could not testify with specificity regarding any financial advice that his C.P.A. may have provided.  We find, however, that there is no indication that he commingled his personal funds with those of his racing activity.

Petitioner obtained marketing materials from a professional design firm to help secure corporate sponsorships for Sernett Motorsports.  These materials indicate that he operated Sernett Motorsports in a businesslike manner.

**[*14]** Petitioner did not have a written business plan during the years in issue. Petitioner's lack of a written business plan indicates that he did not operate Sernett Motorsports in a businesslike manner.

We find credible petitioner's testimony that he tried to minimize expenses and maximize his chances of winning races. However, this is also consistent with respondent's theory that petitioner's racing activity was an expensive hobby. Sprint car racing is a competitive sport, and petitioner, no doubt, did whatever he could to win races and minimize his expenses.

In short, petitioner conducted Sernett Motorsports in a manner consistent both with the operation of a profit-seeking enterprise and with the enjoyment of an expensive hobby. Accordingly, this factor is neutral.

### 2. The Expertise of Petitioner or His Advisers

Preparation for an activity by an extensive study of its accepted business, economic, and scientific practices, or consultation with those who are experts therein, may indicate a profit objective. Engdahl v. Commissioner, 72 T.C. at 668; sec. 1.183-2(b)(2), Income Tax Regs. Efforts to gain experience and a willingness to follow expert advice may also indicate a profit objective. See, e.g., Dworshak v. Commissioner, T.C. Memo. 2004-249, 88 T.C.M. (CCH) 403, 406 (2004).

**[*15]** Petitioner contends that his expertise and the expertise of those with whom he consulted are indicative of a profit motive. Respondent contends that petitioner lacked expertise with respect to creating a profitable racing enterprise and failed to seek advice from experts on making Sernett Motorsports profitable.

Petitioner has a bachelor's degree in business administration from Creighton University and is a successful salesperson. He managed a racing team for C.L. Boyd during the early 1980s and raced sprint cars for others for 15 years before starting his own sprint car racing activity. Since then petitioner has been racing for and managing Sernett Motorsports. Petitioner regularly consulted with a close network of sprint car racing enthusiasts, frequented racing supply shops, and attended the Performance Racing Industry Trade Show in Orlando, Florida. We are satisfied that petitioner had the requisite expertise to run a sprint car racing business. Accordingly, this factor favors petitioner.

### 3. Petitioner's Time and Effort Devoted to the Activity

The fact that a taxpayer devotes personal time and effort to carry on an activity may indicate an intention to derive a profit, particularly where there are no substantial personal or recreational elements associated with the activity. Sec. 1.183-2(b)(3), Income Tax Regs.

**[\*16]** Petitioner contends that he spent significant time racing and preparing to race and reduced the hours he worked for NACR during the racing season.  Respondent contends that petitioner's testimony with respect to the amount of time he spent on his racing activity is uncorroborated and self-serving and that it is anyway insufficient to show that his racing activity was conducted with a profit motive.

Petitioner credibly testified that he spent 15-20 hours during the week before a racing event preparing for the event.  Petitioner explained that he disassembled the cars after each race and then cleaned, inspected, and replaced various parts, as required.  He credibly testified that, during the years in issue, he raced between 10 and 16 weekends per racing season[6] and that he traveled to events up to five hours away from his shop in Lakeville, Minnesota.  Petitioner also credibly testified that he reduced the number of hours that he spent working for NACR from 40-50 per week during the off-season to 20-25 per week during the racing season.

Although, as we find infra pp. 26-27, petitioner enjoys racing, we find that petitioner also spent significant personal time and effort preparing his cars for

---

[6]Petitioner's records show that he raced on 6, 18, and 10 weekends in 2005, 2006, and 2007, respectively.

[*17] racing events.  See Foster v. Commissioner, T.C. Memo. 2012-207, slip op. at 18.  Additionally, petitioner significantly reduced the hours he spent working his lucrative, fully commissioned job for NACR so that he could prepare his cars for racing events.  Accordingly, this factor favors petitioner.

### 4. Expectation That Assets Used in the Activity May Appreciate

An activity may produce an overall economic profit, even if there is no operational profit, when appreciation of the assets of the activity is taken into account.  Sec. 1.183-2(b)(4), Income Tax Regs.

Petitioner contends that his equipment should not have to appreciate for him to show a profit motive.  Respondent contends that petitioner introduced no evidence that his equipment appreciated, and the record supports an inference that petitioner's equipment was not appreciating.

Petitioner has introduced no evidence that any of his racing equipment or assets appreciated.  See Rule 142(a)(1).  However, the absence of asset appreciation does not indicate that petitioner lacked a profit motive.  See Foster v. Commissioner, slip op. at 19.  Accordingly, this factor is neutral.

**[*18]**     5.     Success in Carrying On Similar or Dissimilar Activities

The fact that a taxpayer engaged in similar activities and converted them from unprofitable to profitable enterprises may indicate that the taxpayer is engaged in the present activity for a profit, even though the activity is presently unprofitable. Sec. 1.183-2(b)(5), Income Tax Regs.

To support his contention that he had success in carrying on similar activities, petitioner merely points to his experience in the racing industry. Respondent contends that petitioner produced no evidence showing that he successfully operated similar activities.

Petitioner has introduced no evidence showing that he engaged in similar activities and converted them from unprofitable to profitable enterprises. See Rule 142(a)(1). Accordingly, this factor is neutral. See Pirnia v. Commissioner, T.C. Memo. 1989-627, 58 T.C.M. (CCH) 740, 743 (1989).

     6.     Petitioner's History of Income or Loss From the Activity

A taxpayer's history of income or loss with respect to an activity may indicate the presence or absence of a profit objective. See Golanty v. Commissioner, 72 T.C. at 426; sec. 1.183-2(b)(6), Income Tax Regs. However, a series of startup losses or losses sustained because of unforeseen circumstances beyond the control of the taxpayer does not necessarily indicate a lack of profit

**[\*19]** motive.  Engdahl v. Commissioner, 72 T.C. at 669; Kahla v. Commissioner,

T.C. Memo. 2000-127, 79 T.C.M. (CCH) 1846, 1852 (2000), aff'd without

published opinion, 273 F.3d 1096 (5th Cir. 2001); sec. 1.183-2(b)(6), Income Tax

Regs.

Respondent contends that (1) petitioner's racing activity has produced

persistent and significant losses since 1992 and (2) petitioner's use of his racing

activity to boost his sales performance with NACR contradicts his claim of a profit

motive for his racing activity.

Sernett Motorsports lost money from 1992 through 2009.  From 2000 through

2007 Sernett Motorsports had gross receipts of $199,963, total expenses of

$770,677, and total losses of $570,714.  This history of significant, sustained losses

is persuasive evidence that petitioner did not operate Sernett Motorsports with a

profit motive.  See Golanty v. Commissioner, 72 T.C. at 427.[7]

---

[7]Petitioner's returns show that Sernett Motorsports suffered losses of $46,160 and $19,956 for 2008 and 2009, respectively, and earned a profit of $7,360 for 2010.  However, we give less weight to the reduced losses for 2008-09 and the small profit for 2010 because the returns for 2008-09 were filed after respondent began examining petitioner's 2005-07 returns and the return for 2010 was filed after the petition was filed in this case.  See Easter v. Commissioner, T.C. Memo. 1992-188, 63 T.C.M. (CCH) 2590, 2593, 2595 (1992).

[*20] To rebut this evidence petitioner points to his success as a salesperson for NACR, arguing that some of this success is attributable to his operation of Sernett Motorsports.[8]

Petitioner credibly testified that part of his success as a salesperson was attributable to his operation of Sernett Motorsports. Petitioner explained that he used Sernett Motorsports as a "marketing, promotional, bonding vehicle" and that he used the racing activity to build long-term relationships with his telephone equipment buyers. Petitioner introduced emails showing that he used Sernett Motorsports as a marketing tool, and NACR's president and CEO, Thomas M. Roles, wrote in a letter dated April 29, 2008, that "Sernett Motorsports has a direct contribution to * * * success in the telephone equipment business from a marketing standpoint and is an important part of his overall success as a sales representative". We therefore find that petitioner continued operating Sernett Motorsports, at least in part, because Sernett Motorsports helped him succeed in his job as a salesperson for NACR.

Although Sernett Motorsports may have increased petitioner's income from NACR, the significant, sustained losses that it produced indicate that petitioner did

---

[8]The parties stipulated that petitioner's 35% commission rate with NACR was not contingent upon his operation of Sernett Motorsports.

[*21] not operate Sernett Motorsports with a profit motive. See Morken v.

Commissioner, T.C. Memo. 1986-535, 52 T.C.M. (CCH) 969, 972 (1986). To the

contrary, petitioner's belief that his racing activity increased his income from NACR

lessened his concern about his losses from Sernett Motorsports. See id.[9] Moreover,

petitioner's generalized belief that his racing activity helped increase his income as a

salesperson is insufficient to overcome the objective evidence of significant,

sustained losses from 1992 through 2009, particularly when petitioner could not

quantify the effect of the racing activity on his commission income.

Petitioner does not contend, and the record does not suggest, that Sernett

Motorsports' significant, sustained losses were startup losses or losses sustained

because of unforeseen circumstances beyond his control. Accordingly, this factor

favors respondent.

### 7. Amount of Occasional Profits

The amount of profits earned in relation to the amount of losses incurred,

the amount of the investment, and the value of the assets in use may indicate a

profit objective. See sec. 1.183-2(b)(7), Income Tax Regs. The opportunity to

earn substantial profits in a highly speculative venture may be sufficient to

---

[9]Petitioner does not argue that his racing activity and his sales activity were one activity within the meaning of sec. 1.183-1(d)(1), Income Tax Regs.

**[\*22]** indicate that the activity is engaged in for profit even though only losses are produced. See id.

Petitioner contends that he had opportunities to earn significant profit from prize money and sponsorship contracts. Respondent contends that petitioner's claimed expectations for earning significant profit were unrealistic.

### a. Prize Money

Sernett Motorsports earned $31,430 in prize money during the years in issue. The $15,000 purse structure that petitioner typically raced for had a top prize of $2,250 and a second prize of $1,750. Petitioner testified that, had he placed higher in the events, he could have earned between $225,000 and $350,000 in prize money during the years in issue.[10] However, petitioner testified that, before the years in issue, he raced in the Knoxville Nationals for a top prize of $140,000 but that he had stopped racing in that event because he did not feel that he was "competitive enough to make money at that event." Petitioner also testified at trial, in March 2012, that he expected to earn prize money of approximately $25,000 in 2012.

---

[10]Petitioner raced in 10, 21, and 16 events in 2005, 2006, and 2007, respectively. Even if petitioner's cars had finished first and second in each event, he would have earned only $188,000 during the years in issue.

[*23] As petitioner's reason for not competing in the Knoxville Nationals during the years in issue and petitioner's more modest expectations for the then-upcoming 2012 racing season show, petitioner is capable of rationally judging his competitiveness. Additionally, we find that petitioner could not have rationally expected that Sernett Motorsports would earn significantly more prize money than it earned during the years in issue.

### b. Sponsorships

Sernett Motorsports earned $6,050 in corporate sponsorships from two local businesses during the years in issue. Petitioner testified that he also sought more lucrative sponsorships but was ultimately unsuccessful. Petitioner testified with some detail regarding two of his proposals.

With respect to the first proposal, petitioner testified that he pursued a $125,000, three-year sponsorship from Tires Plus in May 2004. Petitioner further testified that he believed that he had a good chance of obtaining the sponsorship from Tires Plus and that the proposal was dropped when Bridgestone acquired Tires Plus in fall 2004. However, in a summary of his solicitations of corporate sponsorships for Sernett Motorsports, petitioner wrote that he met with Tires Plus in April 2003. Additionally, the written proposal for the sponsorship from Tires Plus states that petitioner was then employed as a national account manager for

**[\*24]** Progressive, and NACR acquired Progressive in 2003. The written proposal also states that petitioner had 25 years of racing experience. Petitioner started racing in 1975, giving him 25 years experience by 2000. The proposal also has several dated quotes, and all of them predate 2000.[11] Accordingly, although we are satisfied that petitioner proposed a sponsorship to Tires Plus, the record does not reliably establish when this proposal was made.

With respect to the second proposal, petitioner testified that he pitched a corporate sponsorship proposal to Jack Links in Laurens, Iowa, in September 2005. The division manager at Jack Links, Karl Paepke, was impressed and arranged for petitioner to meet with Jack Links' marketing director, Peachy Hall, in Minong, Wisconsin, in May 2006. Jack Links ultimately decided not to sponsor Sernett Motorsports because Sernett Motorsports' demographics did not correspond with Jack Links' target demographics at the time. Petitioner did not testify regarding the terms of the proposed Jack Links sponsorship.

---

[11]We also note, pursuant to Fed. R. Evid. 201(c)(1), that Bridgestone Americas, Inc., then Bridgestone/Firestone, Inc., purchased a controlling stake in Morgan Tire & Auto, Inc. (Morgan), in August 2001. See "Bridgestone/Firestone, Inc. Announces Strategic Alliance With Morgan Tire & Auto", Bridgestone, The Americas, Media Center (Aug. 9, 2001), http://www.bridgestoneamericas.com/news/news_index.asp?id=2001/010809a (last visited Oct. 15, 2012). Under the terms of Morgan's agreement with Bridgestone, Morgan agreed to rename its retail centers "Tires Plus". See id.

**[\*25]**  We note that even if petitioner had secured a three-year sponsorship along the lines of the unsuccessful Tires Plus proposal for the years in issue, Sernett Motorsports would still have lost money.  There is no credible evidence in the record that any of petitioner's other proposals would have brought Sernett Motorsports close to returning a profit.  Accordingly, we find that there was little or no likelihood that Sernett Motorsports would earn significantly more sponsorship money than it earned <u>during the years in issue</u>.

Because there is no credible evidence that the substantial losses sustained by Sernett Motorsports were likely to be offset by greater amounts of prize money and sponsorship income during the years in issue, this factor favors respondent.

### 8.    Petitioner's Financial Status

The fact that a taxpayer does not have substantial income or capital from sources other than the activity in question may indicate that the activity is engaged in for profit.  <u>See</u> sec. 1.183-2(b)(8), Income Tax Regs.  Substantial income from sources other than the activity (especially if the losses from the activity would generate substantial tax benefits) may indicate a lack of profit motive, particularly where elements of personal pleasure or recreation are involved.  <u>See</u> <u>id.</u>

Petitioner contends that his success selling telecommunications equipment for NACR depends on his involvement with Sernett Motorsports and sprint car

[*26] racing.  Respondent contends that petitioner's financial status indicates that he did not operate Sernett Motorsports with a profit motive because he received significant compensation from his employment with NACR during the years in issue and Sernett Motorsports' losses generated large tax savings.

During the years in issue, petitioner earned a significant income as a fully commissioned salesperson for NACR.  The losses petitioner incurred from operating Sernett Motorsports provided substantial tax benefits.  And, as we find infra pp. 26-27, petitioner enjoyed racing.  Accordingly, this factor favors respondent.

### 9.     Elements of Personal Pleasure or Recreation

The existence of personal pleasure or recreation relating to an activity may indicate the absence of a profit objective.  See sec. 1.183-2(b)(9), Income Tax Regs. However, an activity is not treated as an activity not engaged in for profit merely because the activity may have recreational or pleasurable elements.  Id.

Petitioner contends that he no longer enjoys racing as he once did and that he raced solely for profit during the years in issue.  Respondent contends that the record shows that petitioner's lifelong involvement in sprint car racing is motivated, not by a desire to make a profit, but by his love of the sport.

**[\*27]** Petitioner testified that maintaining his cars has become a chore and that "the thrill is basically gone". Petitioner further testified that he continues racing because "it makes me money". We do not find petitioner's self-serving, uncorroborated testimony to be credible. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Accordingly, this factor favors respondent.

10. Conclusion

Of the nine factors listed in section 1.183-2(b), Income Tax Regs., four favor respondent, two favor petitioner, and three are neutral. Because Sernett Motorsports was a mature activity during the years in issue, we place particular emphasis in our analysis on its history of significant, sustained losses and on petitioner's inability to reduce Sernett Motorsports' expenses or increase its income. See Golanty v. Commissioner, 72 T.C. at 427 (history of sustained losses is persuasive evidence of activity not entered into with profit motive). After considering the factors, and the facts and circumstances of this case, we conclude that petitioner did not have an actual, honest profit objective in operating Sernett Motorsports during the years in issue. Accordingly, petitioner's deductions for expenses incurred with respect to Sernett Motorsports are subject to the limitations of section 183.

**[\*28]**  We have considered the parties' remaining arguments, and to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing and respondent's concession,

<u>Decision will be entered</u>

<u>under Rule 155</u>.